**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Walter SHAW, Defendant-Appellant.**

No. 76–2699.

United States Court of Appeals,
Fifth Circuit.

July 18, 1977.

Rehearing Denied Aug. 24, 1977.

Ronald K. Smith, Coral Gables, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., David F. Geneson, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before GEWIN, RONEY and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

On June 5, 1975, an eight count indictment was returned by a grand jury for the

Southern District of Florida against defendant, Walter Shaw. Defendant was charged with knowingly and intentionally devising a scheme and artifice to defraud the Southern Bell Telephone Company (Southern Bell) by depriving it of the money due for long-distance telephone calls in violation of 18 U.S.C.A. § 1343[1] and 47 U.S.C.A. § 220.[2] The eight counts concerned four specific telephone calls made between January 25 and 29, 1973. On April 8, 1976, a jury returned a verdict of guilty on all counts and defendant was sentenced to three years imprisonment. We affirm.

The issues on this appeal relate to the trial court's denial of several motions made by defendant prior to and during the trial. First, defendant moved to dismiss the indictment on the basis that he had been denied a speedy trial in violation of the Sixth Amendment and the due process clause of the Fifth Amendment. Second, defendant moved to disallow the use of a voice exemplar obtained from him while he was a grand jury witness. Third, at the close of the government's case, defendant moved for judgment of acquittal due to the fact that the prosecution had failed to identify defendant as the individual charged in the indictment and referred to by the government witnesses. Finally, defendant moved for judgment of acquittal on the basis that the government had totally failed to prove the specific intent required for conviction.

A general overview of the trial proceedings is necessary to an understanding of the issues raised. The government showed that in late 1972 and early 1973 Southern Bell randomly monitored some telephones as part of a program to detect fraudulent users. In sum, Southern Bell could detect the extraordinary use of toll-free numbers, more commonly referred to as "800" numbers. Southern Bell suspected that this overuse of "800" numbers could signify the presence of a "blue box." A "blue box" is a device which permits long-distance telephone calls to be made by "bouncing off" normal "800" lines.

Monitoring of defendant's telephone[3] revealed a disproportionate use of "800" numbers. Southern Bell knew that, if defendant was in fact employing a "blue box" on his telephone, then he must be employing a certain tone in order to "bounce off" the normal "800" lines. Thus, Southern Bell installed a device which would automatically record the conversation on defendant's telephone for sixty seconds whenever the requisite tone was emitted.

Shortly thereafter, Southern Bell realized that a sixty second interval was insufficient time in some instances, particularly on overseas calls, to determine the nature of the calls being made. Thus, Southern Bell installed a manual device whereby an investigator could record any conversations made on calls preceded by the requisite tone. In all, defendant made 108 attempts to place telephone calls by using the proper tone to "bounce off" normal "800" lines. Twelve calls were successfully completed and four of these were made the subject matter of the grand jury indictment.

---

1. 18 U.S.C.A. § 1343 provides:
   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted my means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2. 47 U.S.C.A. § 220(e) provides in part:
   Any person who shall willfully make any false entry in the accounts of any book of accounts or in any record or memoranda kept by any such carrier, or who shall willfully destroy, mutilate, alter, or by any other means or device falsify any such account, record, or memoranda, or who shall willfully neglect or fail to make full, true, and correct entries in such accounts, records, or memoranda of all facts and transactions appertaining to the business of the carrier, shall be deemed guilty of a misdemeanor, and shall be subject, upon conviction, to a fine of not less than $1,000 nor more than $5,000 or imprisonment for a term of not less than one year nor more than three years, or both such fine and imprisonment: . . .

3. This residence telephone was actually listed in the name of defendant's stepfather.

Defendant denied that he intended to defraud the telephone company by placing long distance calls which bypassed the normal billing system. Defendant did not deny placing the telephone calls but he did deny that he placed the calls by using a "blue box." Instead, defendant testified that he was an inventor in the telecommunications field and that he was testing equipment at the time these telephone calls were made. Defendant asserted that he had no intention of defrauding the telephone company out of any money, although he admitted that he knew that his telephone calls were bypassing the normal billing system. Defendant further stated that he felt that Southern Bell was harassing him because, as a former employee, he was now in competition with Southern Bell in the telecommunications field.

Defendant moved to dismiss the indictment on the ground that he had been denied his Fifth and Sixth Amendment rights by the unnecessary and unreasonable delay in the government's procurement of his indictment. The record reveals that Southern Bell's investigation of defendant terminated in early 1973. In April, 1973, Southern Bell turned over the fruits of its investigation to a grand jury. This grand jury accepted the evidence compiled by Southern Bell but issued no indictment. Then, in June, 1975, defendant was called before another grand jury in the Southern District of Florida and directed to provide the Federal Bureau of Investigation (FBI) with a voice exemplar. On the basis of this voice exemplar and the evidence compiled by Southern Bell, defendant was indicted. Defendant claims that this was an unnecessary and unreasonable delay by the government.

Furthermore, defendant asserts that he was extremely prejudiced by this twenty-eight month delay. Defendant testified that if he had been indicted in 1973, he could have produced two research assistants who worked with him on testing his equipment. At the time of trial, however, defendant was unable to locate either of his potential witnesses. Likewise, defendant stated that he could have produced his test equipment in 1973, but at the time of trial

in April, 1976, the equipment was inaccessible to him. Defendant stated that the records and logs which he had maintained in connection with his tests were also unavailable. Defendant also testified that his financial condition had deteriorated substantially since 1973. Thus, in 1975–76 he was unable to employ an investigator who possibly could have located his potential witnesses, test equipment and business records. Finally, defendant's heart condition had materially worsened and, not only was he unable to remember specific facts to support his defense, but he was also unable to adequately assist his counsel in preparing a defense.

The government takes issue with the assertion that the delay was unnecessary and unreasonable and asserts that defendant has failed to show any actual prejudice resulting from the delay. The government generally concedes that the only additional evidence presented to the grand jury in 1975 was the voice exemplar of defendant. The government notes, however, that the material which Southern Bell gave the grand jury in 1973 was in raw form and unverified. Thus, it was necessary for the FBI to verify the accuracy of the evidence submitted by Southern Bell in 1973. Once this was done, the government asserts that it proceeded to the grand jury and obtained a voice exemplar and defendant's indictment. Furthermore, the government explains the delay on the basis that in the process of allocating prosecutorial resources this case was not given a high priority. Thus, the prosecution waited for some similar cases to arise and then appointed a special attorney to handle all of them.

We are, of course, concerned in this case with a delay of some twenty-eight months between the commission of the alleged offense and the initiation of the prosecution in the form of an indictment. Since we are considering pre-arrest, pre-indictment delay, the speedy trial clause of the Sixth Amendment is irrelevant to our analysis. *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

Under these circumstances the statute of limitations normally provides the primary guarantee against bringing overly stale criminal charges. Yet, the due process clause of the Fifth Amendment also protects against oppressive delay. *Id.* Our due process analysis must focus on factors such as the length of the delay, the reason for the delay, and the prejudice which the delay may have caused the accused.

The United States Supreme Court has very recently emphasized that actual prejudice to the accused does not result in automatic dismissal. The Supreme Court noted that *Marion* established "only that proof of actual prejudice makes a due process claim concrete and ripe for adjudication, not that it makes the claim automatically valid." *United States v. Lovasco,* —— U.S. ——, ——, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Thus, "[a]ctual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution." *United States v. Marion, supra,* 404 U.S. at 324–325, 92 S.Ct. at 465 (footnote omitted). "Thus, *Marion* makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *United States v. Lovasco, supra.* Rejecting the notion that judges may impose their personal and private notions of fairness, the court defined our task to be "to determine only whether the actions complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.'" *Id.* (citations omitted). Upon application of this test the Supreme Court in *Lovasco* reversed the trial court's dismissal of the indictment concluding "that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Id.,* at ——, 97 S.Ct. at 2052.

Upon consideration of the evidence in this case, the trial court was of the opinion that this was "perhaps the strongest case of prejudice" that he had ever seen. Nevertheless, he did not believe that defendant had demonstrated such extreme prejudice as to require dismissal of the indictment. Thus, since we accept the finding that defendant was somewhat prejudiced by the delay, our inquiry must turn to the reasons for the delay and determine whether the prosecution's actions violated "fundamental conceptions of justice" or "the community's sense of fair play and decency."

*Lovasco* itself establishes that prosecutors may defer seeking indictments until they have probable cause to believe an accused is guilty. Furthermore, prosecutors may delay until they are satisfied that they will be able to establish the suspect's guilt beyond a reasonable doubt. *Id.,* at ——, 97 S.Ct. 2044, *see also United States v. Avalos,* 541 F.2d 1100, 1107–1108 (5th Cir. 1976). In the instant case we have a twenty-eight month delay resulting from a need to verify the incriminating evidence and the allocation of manpower and assignment of priorities among investigations. We are persuaded that on this record the combination of the need to investigate and the necessity of allocating prosecutorial resources resulting in a twenty-eight month delay between the commission of the offenses and indictment is not such a deviation from elementary standards of fair play and decency or so inimical to our fundamental conceptions of justice as to deprive defendant of due process of law in violation of the Fifth Amendment.

Defendant was called before the grand jury in 1975 and directed to provide a voice exemplar. After consultation with his attorney, defendant voluntarily complied with the order. Of course, defendant was subsequently indicted and his voice exemplar was a crucial piece of evidence in the government's case. Defendant asserts that in this process the grand jury was reduced to nothing more than an arm of the prosecution and that to allow this practice

will undermine the integrity of the grand jury system. In addition, defendant argues that he was not made aware of the fact that he was the focal point of a criminal investigation and of the possible consequences of his compliance. Finally, defendant contends that if he had been made aware of his precarious position, he would have insisted upon some judicial scrutiny to insure that no abuses or excesses were occurring.

Defendant's arguments are unsound. The historic task of the grand jury is to inquire into the existence of possible criminal conduct and to return only well-founded indictments. *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

> [The grand jury] is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning.

*Blair v. United States,* 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919). It is also the historic obligation of every person to appear and give his evidence before the grand jury. *United States v. Dionisio,* 410 U.S. 1, 10–11, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). The mere fact that the prosecution in this case may have suggested that defendant be called for the purpose of giving a voice exemplar in no way impugns the integrity of the grand jury's investigation.

Defendant's assertions that he should have been told that he was the subject of a criminal investigation and that he had the right to refuse to give a voice exemplar and suffer the pains of contempt are specious. First, defendant in fact discussed his situation with an attorney. More importantly,

the taking of a voice exemplar impinges upon no right protected by either the Fourth, Fifth or Sixth Amendments to the Constitution. *United States v. Dionisio, supra; United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). In effect, defendant contends that if he had known that he was the target of a grand jury investigation, he might have chosen the risk of confinement for the refusal to provide a voice exemplar rather than give the voice exemplar and risk the possibility of indictment and conviction on substantive criminal charges. The short answer to this contention is that we can conceive of no constitutional basis upon which such a requirement might plausibly be premised. *See United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976).

Defendant contends that the evidence presented at trial was insufficient as a matter of law to establish the necessary element of specific intent. Of course the matter of defendant's guilt is for the jury to decide unless we conclude that the jury must necessarily have had a reasonable doubt as to his guilt. The test is whether, taking the view most favorable to the government, a reasonably minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt. *United States v. Reynolds,* 511 F.2d 603, 606 (5th Cir. 1975); *United States v. James,* 510 F.2d 546 (5th Cir.), *cert. denied,* 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975); *United States v. Warner,* 441 F.2d 821 (5th Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). Viewed most favorably to the government, the evidence revealed that defendant made approximately 108 attempts to complete telephone calls which would by-pass Southern Bell's normal billing system; approximately 12 telephone calls were completed and 4 specific telephone calls were made the subject of the indictment; defendant made use of a "blue box" to transmit these calls; defendant knew that these phone calls

would by-pass Southern Bell's normal billing system; defendant did not have permission to place these telephone calls; and on at least three occasions defendant communicated with more than mere "test words" with specific persons that he knew. On this evidence we are persuaded that the issue of specific intent was properly submitted to the jury.

Finally, defendant urges that it was error for the district court to allow the government to reopen to prove identity. As noted earlier, the government failed to identify defendant as the person made the subject matter of the grand jury's indictment and the evidence at trial. While the government had rested its case-in-chief, defendant had presented no evidence and the jury had not been charged. In these circumstances the decision to allow the government to reopen to present evidence inadvertently omitted is within the sound discretion of the trial court. *United States v. Ard*, 544 F.2d 225, 227 (5th Cir. 1976); *United States v. Batie*, 457 F.2d 927 (5th Cir. 1972); *Hale v. United States*, 410 F.2d 147 (5th Cir.), *cert. denied*, 396 U.S. 902, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969). We find no abuse in this case, particularly where defendant does not even allege prejudice.

On the basis of the foregoing, defendant's conviction is hereby

AFFIRMED.