UNITED STATES of America

v.

Otto E. PASSMAN.

Crim. No. 78–30013–01.

United States District Court, W. D. Louisiana, Monroe Division.

Feb. 28, 1979.

David R. Scott and Michael Cannon, U. S. Dept. of Justice, Washington, D. C., J. Ransdell Keene, U. S. Atty., William L. Goode, Asst. U. S. Atty., Shreveport, La., for the United States.

Camille F. Gravel, Jr., Gravel, Roy & Burnes, Alexandria, La., for defendant.

VERON, District Judge.

## RULING ON MOTIONS

This case presents two groups of questions centered on unconstitutional pre-indictment delay and prosecutorial misconduct and overreach. The examination is not one of first instance.

Otto E. Passman, the defendant and former United States Congressman, currently

faces two indictments that were filed on March 31, 1978 [1] and on April 28, 1978.[2]

The defendant filed a two tine motion to dismiss the indictments requesting an evidentiary hearing and production of subpoenaed documents. These causes came on for hearing in Lake Charles on December 19, 1978 and January 5, 1979. The defendant's design for an evidentiary hearing and subpoena was to afford him the opportunity to prove the allegations made in the motion to dismiss. We accept the defendant's allegations as true for the purpose of the motion to dismiss. We deny the request for an evidentiary hearing and grant the government's motion to quash the defendant's subpoena because the motion to dismiss is insufficient as a matter of law.

To preliminarily summarize, Otto Passman avers that the indictments currently pending against him should be dismissed for dual reasons. Firstly, the defendant argues that he has suffered a violation of due process of law guaranteed to him by the fifth amendment of the United States Constitution ensuing from undue pre-indictment delay. This ground for attack must fail because the alleged undue delay was due to the failure of the government to investigate and prosecute a witness, and the defendant has no standing to complain of pre-indictment delay of a witness. The prosecution is not required to bring an indictment until they have probable cause to believe an accused is guilty; and in fact, there is a duty to defer seeking indictments until sufficient admissible evidence of guilt is obtained. Furthermore, there have been no allegations of substantial prejudice during the relevant time period of delay. The defendant concedes that he cannot show that the delay was caused by the government to gain a tactical advantage over the defendant. Finally, the test of weighing the prejudice to the defendant against the government's reasons for delay is not appropriate in this case because there has been no delay or prejudice.

Secondly, the motion to dismiss based on prosecutorial misconduct and overreach must also fail. The defendant has no standing to object to an immunity agreement between the government and Tong Sun Park, a government witness, where the immunity agreement is conditioned on the witness' full and truthful testimony.

## BACKGROUND

The following scenario is a synopsis of the defendant's allegations offered in support of the motion to dismiss.[3]

As early as 1970 the United States Central Intelligence Agency (CIA) learned of plans being devised at the Blue House, the official home of the President of Korea, to influence American officials. Other agencies of the United States were aware of Tong Sun Park being chosen by President Park to coordinate the Korean lobbying effort to influence the members of Congress.

In 1971 several agencies of the United States ascertained information of a plan to influence improperly members of the United States Congress and were aware of unlawful payments which had been made to some of the Congressmen. This knowledge was due in part to the complaints made by Otto Passman to several high ranking officials of the United States. More specifically, the defendant wrote William Porter, the United States Ambassador to Korea, in March of 1971 to complain of Tong Sun Park's intervention in rice sales between the United States and Korea. Phillip Habib, who later that year replaced William

---

1. The March 31, 1978 indictment charges Otto Passman with violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 201(c)(1) (bribery), and 18 U.S.C. § 201(g) (illegal gratuity).

2. The second indictment of April 28, 1978 charges Otto Passman with violations of 26 U.S.C. § 7201 (tax evasion). The two indictments at issue in this decision were filed in the District of Columbia but they were transferred to the Western District of Louisiana after consolidation.

3. Many of the allegations made by the defendant are based on newspaper articles and other inadmissible evidence, but because we deny the evidentiary hearing and quash the subpoena we will accept these allegations as true only for the purpose of the motion to dismiss.

Porter as Ambassador to Korea, was also informed by Mr. Passman of Tong Sun Park's improper activities with members of Congress. In addition, Mr. Passman had informed State Department official Winthrop Brown that Tong Sun Park had made campaign contributions to members of Congress in the amount of $400,000.00 and had offered him valuable jewelry that he had refused to accept. Thereafter, Mr. Brown turned this information over to the FBI.

The Department of Justice ordered the F.B.I. to investigate Tong Sun Park at the urging of the Department of State which had strong suspicions of Park being involved in the impermissible Korean lobbying efforts in the United States.

During the Spring of 1972, one intelligence report depicted Tong Sun Park as President Park's personal representative in arranging rice deals. The report also identified certain officers of the Korean Central Intelligence Agency (KCIA) who were handling rice transactions for the purpose of raising funds to be used in part for unlawfully influencing members of Congress.

In 1972 there were also certain intelligence reports which revealed that the Korean government had contributed funds to the Democratic party in 1968 and also reflected the Korean intention to begin to support the Republican party. Recipients of any campaign contributions by an agent of a foreign principal was prohibited by 18 U.S.C. § 613. United States intelligence was aware of the names of certain Senators and Congressmen that the Korean government believed it could influence. Although Tong Sun Park's name was mentioned in these reports, there are no allegations of any United States agencies having any evidence against the defendant, but it is the defendant's position that he was publicly connected with Tong Sun Park.

On December 8, 1973, Tong Sun Park was detained in a customs check in Anchorage Alaska. Robert Hazelton, an agent present, procured a document from Park which was entitled "Congressional List." This list contained the names of seventy to eighty public officials with corresponding numbers listed under a "Contribution Column." Otto Passman's name was listed on the "Congressional List," which Robert Hazelton turned over to his superior officer.

In the Spring of 1974, John Nidecker, a White House aide, was given an envelope with $10,000.00 in it by Row Chin Hwan, a Korean assemblyman. Row Chin Hwan later asked John Nidecker to serve as a conduit for campaign contributions to candidates for the United States Senate and House. This incident was reported to certain United States officials.

In late 1975 Philip Habib, the United States Ambassador to Korea, transmitted to Henry Kissinger more precise information of extra-legal Korean efforts to influence members of Congress. Dr. Kissinger consulted with President Ford who directed that the information be transmitted to the Attorney General. At the same time the United States Department of Agriculture (USDA) was investigating complaints that Congressman Passman was using his influence to help Tong Sun Park with certain rice transactions.

In June 1976 a grand jury was impaneled to investigate Tong Sun Park.

A sealed indictment was handed down on August 26, 1977, against Tong Sun Park who was out of the country. When Park learned of the indictment he fled to Korea where he could not be extradited. After confecting certain immunity agreements and thereby gaining access to Tong Sun Park's testimony, the grand jury returned two indictments against the defendant on March 31, 1978 and April 28, 1978.

## PRE–INDICTMENT DELAY

Otto Passman challenges the constitutionality of his prosecution due to the government's failure to investigate and prosecute Tong Sun Park, a witness, as far back as 1971 when the government agencies first began to become aware of Park's illegal activities in the United States.[4] The major

---

4. Count I of the March 31, 1978 indictment alleges that a conspiracy between Park and Passman began on or about January 16, 1972, and continued until some time in 1975.

deficiency with this argument is that it focuses on the wrong person—Tong Sun Park.

▮▮▮ The statute of limitations provides the aboriginal armor against criminal charges that have become stale, however, the fifth amendment of the United States Constitution does occupy a limited role in guarding against oppressive delay.[5] This pre-indictment delay should be judged against the standards of due process contained in the fifth amendment rather than the sixth amendment right to a speedy trial.[6] Some panels in the Fifth Circuit require the defendant to show substantial prejudice stemming from a delay, and that this delay was the result of a deliberate maneuver by the government to gain a tactical advantage over the defendant.[7] The defendant candidly concedes that he cannot show that the delay was a result of a tactical maneuver by the government, and therefore, he cannot meet this test. Other panels hold that the prejudice to the defendant is to be weighed against the validity of the government's reason for delay. This balancing is to determine if it would be

fundamentally unfair to compel the defendant to stand trial.[8]

▮▮▮ Prosecutors may defer seeking indictments until they have probable cause to believe an accused is guilty. Prosecutors may delay until they are convinced that they will be able to establish the suspect's guilt beyond a reasonable doubt but they are not required to bring charges as soon as probable cause may exist.[9] Under this test the defendant has failed to show any delay in the government's indicting him as distinguished from delay in indicting Tong Sun Park. The only relevant time period for Otto Passman's pre-indictment delay claim is that time which occurred before his, Mr. Passman's, indictment and after the government acquired sufficient admissible evidence against him.

▮▮▮ It has become abundantly clear that the government did not have a case against the defendant until they were able to acquire the cooperation of Tong Sun Park. The defendant points to several examples of this in the second part of his motion to dismiss. A grand jury was im-

---

Counts I and II of the April 28, 1978 indictment charge the defendant with attempting to evade a large part of his income tax for the years 1972 and 1973. Thus, the defendant has alleged that the government should have investigated and prosecuted a witness before the alleged commission of the offenses by the defendant.

5. *United States v. Parker*, 586 F.2d 422 (5th Cir. 1978); *United States v. Shaw*, 555 F.2d 1295 (5th Cir. 1977).

6. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Ramos*, 586 F.2d 1078 (5th Cir. 1978); *United States v. Parker*, 586 F.2d 422 (5th Cir. 1978); *United States v. Traylor*, 578 F.2d 108 (5th Cir. 1978); *United States v. Avalos*, 541 F.2d 1100 (5th Cir. 1976), *rehearing denied en banc* 545 F.2d 168, *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977).

7. *United States v. Ramos*, 586 F.2d 1078 (5th Cir. 1978); *United States v. Parker*, 586 F.2d 422 (5th Cir. 1978); *United States v. Avalos*, 541 F.2d 1100 (5th Cir. 1976), *rehearing denied en banc*, 545 F.2d 168, *cert. denied*, 430 U.S.

970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977); *United States v. Byrum*, 540 F.2d 833 (5th Cir. 1976), *rehearing denied en banc*, 542 F.2d 1174, *cert. denied*, 429 U.S. 1076, 97 S.Ct. 819, 50 L.Ed.2d 796 (1977).

8. *United States v. Medina-Arellano*, 569 F.2d 349, (5th Cir. 1978); *United States v. Brand*, 556 F.2d 1312, 1317 n. 7 (5th Cir. 1977), *rehearing denied en banc*, 561 F.2d 831 (1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1237, *rehearing denied*, 435 U.S. 961, 98 S.Ct. 1593, 55 L.Ed.2d 811 (1978); In the case of *United States v. Rice*, 550 F.2d 1364 (5th Cir. 1977), *rehearing denied en banc*, 554 F.2d 476, *cert. denied*, 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 the court held that the defendant must show substantial actual prejudice resulting from the delay *or* that the delay was an intentional measure designed to gain a tactical advantage for the prosecution.

9. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Shaw*, 555 F.2d 1295 (5th Cir. 1977); *United States v. Avalos*, 541 F.2d 1100 (5th Cir. 1976), *rehearing denied en banc*, 545 F.2d 168, *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977); *United States v. Butts*, 524 F.2d 975 (5th Cir. 1975).

paneled to investigate Tong Sun Park in June of 1976. Tong Sun Park was out of the country when the grand jury handed down his indictment. Although the indictment was sealed, word of it leaked out; when Park became aware of the indictment, he fled to Korea where he could not be extradited. After extended negotiations between the United States and Korea, several immunity agreements were confected. Pursuant to these agreements, members of the Justice Department traveled to Seoul, Korea and questioned Tong Sun Park under oath on the record for over two weeks, beginning on January 13, 1978 and terminating on February 1, 1978. As a result of Park's testimony, the grand jury returned the first indictment against Otto Passman on March 31, 1978 and the second indictment on April 28, 1978. Thus, the delay between the time the government first obtained sufficient admissible evidence and the return of the indictment against the defendant was less than two months. It is clear that investigative delay in seeking an indictment is fundamentally distinct from delay solely for the purpose of securing a tactical advantage.[10] Additionally, the government is not responsible for the period of pre-indictment delay during which an important witness is unavailable due to the witness' refusal to cooperate.[11] The only issue here is the delay in indicting the de-

fendant not the delay in indicting a witness such as Tong Sun Park,[12] for the defendant lacks standing to challenge the failure of the government to instigate criminal proceedings against another person.[13]

If the defendant had been able to show some delay, he must then satisfy his burden of establishing actual prejudice [14] stemming from the delay.[15] The defendant submits that he has been prejudiced by the death of three witnesses, former Governor James A. Noe, Senator Hubert Humphrey, Senator John McClellan and others "who were in a position to give supportive relevant testimony" for defendant Passman. Mr. Passman also points to the loss of twenty-three classified documents which he claims would have been of significant value to him (Passman) if for nothing more than to impeach Tong Sun Park, or to understand Park's motivations, duties, and relationship with the Korean government. In light of the primary protection being afforded by the appropriate statute or limitations, diminished recollection alone does not constitute the substantial prejudice required in a successful pre-indictment delay motion.[16] The defendant's proof of prejudice must be definite and not speculative. The mere assertion of a missing witness's potential usefulness does not show the actual prejudice required.[17] None of the pro-

---

10. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Ramos*, 586 F.2d 1078 (5th Cir. 1978).

11. *United States v. Cheung Kin Ping*, 555 F.2d 1069 (2d Cir. 1977); *United States v. Rubinson*, 543 F.2d 951 (2d Cir. 1976), *cert. denied*, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124.

12. Page 8 of the government's brief makes this point clear: "The underlying premise of the defendant's argument in support of his motion is that had the Government arrested or indicted Tong Sun Park in 1971 or 1972, the present indictment of Otto Passman would never have been returned. (See Def. Br. at 5). This may be true, just as it would be true that had Tong Sun Park not been born, the indictment of Passman would never have existed. Such a claim, however, does not entitle the defendant to any relief under the Due Process Clause for pre-indictment delay."

13. *Linda R. S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1977).

14. *United States v. West*, 568 F.2d 365 (5th Cir. 1978) *rehearing denied en banc* 572 F.2d 320, *cert. denied*, 436 U.S. 958, 98 S.Ct. 3073, 57 L.Ed.2d 1123; *United States v. Mejias*, 552 F.2d 435 (2d Cir. 1977), *cert. denied Padilla-Martinez v. United States*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115.

15. See notes 7 & 8 *supra*.

16. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); · *United States v. Ramos*, 586 F.2d 1078 (5th Cir. 1978); *United States v. McGough*, 510 F.2d 598 (5th Cir. 1975).

17. *United States v. Rice*, 550 F.2d 1364 (5th Cir. 1977), *rehearing denied en banc* 554 F.2d 476, *cert. denied*, 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312; *United States v. Bynum*, 540 F.2d

spective witnesses died during the delay between the time the government first obtained sufficient admissible evidence to warrant seeking an indictment against the defendant.

█ Otto Passman's claim of prejudice also rests heavily on the progressive deterioration of the defendant's physical and mental faculties. Here again it must be remembered that the prejudice must stem from the delay [18] and the delay in this case was less than two months.

## PROSECUTORIAL MISCONDUCT AND OVERREACH

The defendant, Otto Passman, also seeks a dismissal of the indictments on the grounds that prosecutorial misconduct and overreach have deprived him of his federal constitutional rights, including but not limited to, those guaranteed to him by the due process clause of the fifth amendment. These allegations arise out of certain promises made by the Department of Justice to Tong Sun Park and the Republic of Korea which the defendant asserts has so undermined the credibility of Tong Sun Park that the only equitable remedy is to dismiss the indictments against him. The motion to dismiss based on this ground must fail because a defendant has no standing to contest the immunity granted to a witness where that immunity is conditioned on the full and truthful testimony of the witness.

As stated earlier, when the indictment of August 26, 1977 was handed down against Tong Sun Park he was out of the country. Learning of this indictment, Park fled to Korea where it would be impossible to extradite him. Park not only refused to return to the United States but he also refused to provide any information to government investigators, even if these investigators were willing to travel to Korea.

Tong Sun Park's information being outside the jurisdiction of the United States, our government commenced negotiations that resulted in the execution of three agreements.[19] These immunity agreements provide for among other things, a "dismissal of the thirty-six count indictment presently pending against Park promptly following the completion of his testimony at the trial of the United States official or person who is prosecuted last, provided that all of Park's testimony shall have been truthful and candid and that Park shall have provided full cooperation, as agreed herein, according to the sole determination of the Department." [20] The defendant's position is that as a result of the immunity agreements "Park is not a witness for the government—He is a hostage for the prosecution. As things stand now, the only ransom which releases him from the captivity and restraint of two governments is the conviction of Otto Passman." [21]

█ In agreeing to come to the United States to testify, Tong Sun Park was waiving his right against self-incrimination and his right not to be extradited. The fifth amendment privilege against self-in-

833 (5th Cir. 1976), *rehearing denied en banc* 542 F.2d 1174, *cert. denied* 429 U.S. 1076, 97 S.Ct. 819, 50 L.Ed.2d 796 (1977); *United States v. McGough*, 510 F.2d 598 (5th Cir. 1975); *United States v. Pallan*, 571 F.2d 497 (9th Cir. 1978), *cert. denied* 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411; *United States v. Mays*, 549 F.2d 670 (9th Cir. 1977).

18. *See* notes 7 & 8 *supra*. *See also United States v. Passman*, 455 F.Supp. 794 (D.D.C. 1978) (Parker, J.).

19. The first agreement, dated December 31, 1977, is entitled "Joint Statement Regarding Cooperation Between The Government's Of The Republic Of Korea And The United States Concerning The Case Of Mr. Tong Sun Park."

The second agreement, dated January 10, 1978, is entitled "Mutual Prosecution Assistance Agreement Between The United States Department Of Justice And The Republic Of Korea Ministry Of Justice Concerning Terms And Conditions For Communicating With Mr. Tongsun Park."

The third agreement, dated January 11, 1978, is entitled "Memorandum Of Understanding Between United States Department Of Justice And Tong Sun Park."

20. *See* page two of Memorandum Of Understanding Between United States Department of Justice And Tong Sun Park.

21. *See* defendant's brief page 29.

crimination is a personal one.[22] It is axiomatic that a defendant may not claim another's privilege against self-incrimination.[23] Finally, a defendant has no standing to contest the legal sufficiency of a grant of immunity to a witness,[24] where that immunity is conditioned on the truthful and candid testimony of the witness.

These agreements are not conditioned on the conviction of Otto Passman. They are conditioned on truthful testimony of Tong Sun Park. Therefore, we hold that under these circumstances the defendant has no standing to contest the immunity given to Tong Sun Park.

### CONCLUSION

In summary and conclusion we have determined that the motion to dismiss the indictments must fail because there has been no pre-indictment delay and there has been no prosecutorial misconduct and overreach. Because we deny the motion to dismiss as a matter of law, we conclude that the request for an evidentiary hearing and production of subpoenaed documents must also fail. For these reasons we granted the government's motion to quash the defendant's request for subpoenaed documents.

SIGNED at Lake Charles, Louisiana, this 28th day of February, 1979.

---

**22.** *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).

**23.** *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *United States v. Newman*, 441 F.2d 165, 170 n. 20 (5th Cir. 1971); *Hudson v. United States*, 197 F.2d 845 (5th Cir. 1952); *Long v. United States*, 124 U.S.App.D.C. 14, 360 F.2d 829 (1966).

**24.** *United States v. Trammel*, 583 F.2d 1166 (10th Cir. 1978); *United States v. Hathaway*, 534 F.2d 386 (1st Cir. 1976), *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79; *United States v. Braasch*, 505 F.2d 139 (7th Cir. 1974), *cert. denied*, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775; *United States v. Lewis*, 456 F.2d 404 (3rd Cir. 1972).