516 So.2d 1349 (1987)
William Lamar HOOKER
v.
STATE of Mississippi.
No. 57285.
Supreme Court of Mississippi.
December 2, 1987.
Julie Ann Epps, Thomas E. Royals, Vaughn Davis, Royals, Hartung & Davis, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ZUCCARO, JJ.
PRATHER, Justice, for the Court:
This is a criminal appeal taken from the Circuit Court of Hinds County wherein the appellant, William Lamar Hooker, indicted on May 15, 1984, was convicted of embezzlement and sentenced to serve five years in the custody of the Mississippi Department of Corrections, with four years suspended, and one to be served. The trial was held in February, 1986, with the new Mississippi Rules of Evidence in effect. On appeal, Hooker assigns as error, inter alia, the following:
(1) The trial court erred in denying the defendant's motion to dismiss the indictment on the ground that his due process rights under the Mississippi and United States Constitutions had been violated by the unexcused and unreasonable delay in charging him with the crime.
(2) The trial court committed reversible error in excluding the testimony of Jewell Rotenberry Harvey.
(3) The trial court committed reversible error in allowing the State to introduce a letter written by Scottye Hooker two days prior to trial.
(4) The trial court committed reversible error in admitting defendant's response to *1350 a request for admission in the civil proceeding.

I.
The Minnie B. Rotenberry trust was established in 1973 with Dr. Clinton Rotenberry and Hooker as co-trustees. Clinton Rotenberry died in 1974, and Hooker became sole trustee. Mrs. Rotenberry was the settlor and sole beneficiary of the trust with all of the net income from the trust to be paid to her annually. The trust, which was irrevocable, consisted of about 1,050 acres of Delta farm land which Mrs. Rotenberry conveyed to the trust at the time it was created. At that time, Hooker was married to Scottye Rotenberry Hooker, the granddaughter of Mrs. Rotenberry.
The $43,500 which is the subject of this case was income received from the sale of dirt from the trust property. In June, 1977, Hooker, as trustee, signed a contract for the sale of dirt with Boyd Construction Company. On May 25, 1978, Boyd Construction issued a check in the amount of $43,500, payable to "Wm. L. Hooker" as payment for the dirt. There is no indication on the back of the check that Mrs. Rotenberry ever possessed it. On May 30, 1978, Hooker made a deposit of the check to a joint bank account, maintained in his and his wife's name.
In February, 1980, Scottye Hooker left Lamar Hooker, and divorce proceedings began, lasting over a year and a half. As part of the divorce decree, Mr. Hooker received custody of two of their three children.
In the summer of 1980, Mrs. Hooker became conservator for her grandmother, Mrs. Rotenberry. Then Mrs. Hooker, joined by others in the family, petitioned the Chancery Court of Quitman County to have her husband removed as trustee and to have him provide an accounting. On July 25, 1980, B.E. Grantham, Jr., was appointed receiver of the trust pending the outcome of the civil suit. Grantham testified that he contacted Hooker about the records of the trust but that Hooker was unable to provide them. Pursuant to chancery court orders, Hooker submitted two accountings, which were unsatisfactory.
In May, 1981, Grantham engaged an accounting firm. On September 30, 1981, Mrs. Rotenberry died at the age of 94 years. On January 13, 1982, James Shearer, the C.P.A. assigned to the case, completed the accounting. He testified to the necessity of reconstructing the records of the trust. From his research, he discovered the $43,500 check received from Boyd Construction and deposited into Hooker's personal account, in his and his wife's names, but he found no activity on the account and no benefit therefrom by Mrs. Hooker after the date of deposit. There was no documentation that the check was for trust business or for distribution to trust beneficiaries. The funds were later transferred to other Hooker accounts.
The civil lawsuit proceeded, and trial was held in April, 1982. Hooker appealed the adverse ruling of the Chancery Court to the Mississippi Supreme Court, which affirmed the chancellor's decision in late 1983. After the civil matter was disposed of, Grantham brought Hooker's conduct to the attention of the District Attorney's office in Hinds County.

II.

DID THE TRIAL COURT ERR IN DENYING THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT ON THE GROUND THAT HIS DUE PROCESS RIGHTS HAD BEEN VIOLATED BY THE UNEXCUSED AND UNREASONABLE DELAY IN CHARGING HIM WITH THE CRIME?
On July 16, 1985, at the hearing on the motion, the parties stipulated that Minnie Rotenberry was the owner of the property allegedly embezzled on June 2, 1978; that she died on September 30, 1981; that during her lifetime, she filed no complaint or report with any law enforcement agency or prosecutor's office anywhere regarding the *1351 matter alleged in the indictment; that the indictment was returned on May 15, 1984; and that no arrest or initiation of prosecution occurred prior to the returning of the indictment.
Grantham testified that in early 1984, he brought information with respect to the trust to the DA's office in the First Judicial District of Hinds County, waiting until then because the civil suit was appealed to the Supreme Court, which did not hand down a final decision until late 1983.
At the conclusion of the hearing, the trial judge overruled the motion to dismiss the indictment.
On November 4, 1985, the affidavit of Lamar Hooker was filed in support of the motion to dismiss the indictment. The affidavit states that inter alia, Hooker delivered the check to Minnie, who was fond of him and his children because of his frequent visits and who told him to take the check and use it for his family, insisting in spite of his reluctance, that he told her that he would pay the money back to her if she needed it and that he took the money and put it into the family account and spent it; and that he believed his ex-wife and her family waited until Minnie was dead before they instituted this criminal prosecution, Minnie being the only person who could verify the affidavit.
The trial judge let stand his previous ruling overruling the motion to dismiss and stated "Certainly, I can understand [Grantham's] desire to protect himself against a false accusation charge, but from what I recall, the chancellor ruled in favor or against Mr. Hooker at the time and that in itself would have been sufficient to bring it to the attention of the District Attorney's office."
Hooker additionally argues in his brief that Grantham in fact brought the matter to the attention of another DA shortly before the final decision of the Supreme Court in the Fall of 1983 and that at trial, Hooker made a proffer of testimony by Minnie's daughter that Minnie had told her that she had given the money from the sale of dirt to Lamar Hooker.
The various statutes of limitations constitute the principal device protecting against delay in the indictment or arrest. Dickerson v. State of Louisiana, 816 F.2d 220, 228 (5th Cir.1987). The appellant has conceded that there is no statute of limitations bar as to the indictment in the instant case. See Miss. Code Ann. § 99-1-5 (1972).
The United States Supreme Court has recognized that a criminal defendant's Fifth and Sixth Amendment rights before trial are not fully defined by the applicable statute of limitations.
In United States v. Marion, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971) and United States v. Lavasco, 431 U.S. 783, 795-96, 97 S.Ct. 2044, 2051, 52 L.Ed.2d 752 (1977) the Supreme Court held that to sustain the burden of establishing that a due process violation has occurred, the defendant must show that (1) the preindictment delay caused actual prejudice to the defendant, and (2) such delay was an intentional device used by the government to obtain a tactical advantage over the accused. See United States v. Wehling, 676 F.2d 1053, 1059 (5th Cir.1982). To establish that actual prejudice has occurred, this Court in United States v. Shaw, 555 F.2d 1295 (5th Cir.1977), delineated certain factors to be considered in evaluating the effect of delay on a due process claim. According to Shaw, our "due process analysis must focus on factors such as the length of the delay, the reason for the delay and the prejudice which the delay may have caused the accused." Id. at 1299.
Where, as here, the indictment or arrest occurred within the period allowed by the statute of limitations and the defendant alleges that the mere delay in the indictment or arrest violated his due process rights, the defendant has the burden of establishing that a due process violation has occurred. United States v. Hendricks, 661 F.2d 38, 40 (5th Cir.1981).
United States v. Johnson, 802 F.2d 833, 835 (5th Cir.1986). Even more recently *1352 than Marion and Lavasco, the United States Supreme Court has stated that "[t]he Fifth Amendment requires the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." United States v. Gouveia, 467 U.S. 180, 192, 104 S.Ct. 2292, 2299, 81 L.Ed.2d 146 (1984).
This Court holds that there is no merit in this argument because there was absolutely no proof that the Government even knew of the alleged embezzlement before Grantham went to the DA's office, which occurred after Minnie Rotenberry's death, much less that the Government deliberately delayed the indictment in order to gain an advantage over the defendant.

III.

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN EXCLUDING THE TESTIMONY OF JEWELL ROTENBERRY HARVEY?
After the State rested, outside the presence of the jury, the court heard the proffered testimony of Jewell Rotenberry Harvey. Jewell testified that she is Minnie's daughter. In 1978, she was in contact with her mother and visited her mother, who at that time owned about a thousand acres of land in the Delta and was worth close to a million dollars. Jewell stated that her mother was in the habit of making gifts to people. Jewell testified that she discussed the sale of dirt with her mother and that her mother mentioned that she had given Lamar a check for dirt from the property. Jewell believed that her mother gave the money to Lamar of her own free will.
On cross, Jewell could not recall the specific amount of the money given to Lamar. She said nothing under oath about the conversation with her mother until December, 1985 because she did not know what the case was about until then. She volunteered to testify. She estimated that the conversation was about seven or eight years ago.
The trial court sustained the objection of the prosecution to allowing Jewell's testimony because her evidence would be hearsay. The defendant requested the witness be allowed to testify as to her knowledge about her mother's habits at that time of making gifts to people, but the trial judge sustained that objection on hearsay grounds as well.
As conceded by the State, Jewell Harvey's hearsay testimony is admissible under the hearsay exception contained in Mississippi Rule of Evidence 804(b)(3), as to the statement against interest of an unavailable witness. Therefore, instead of arguing that the ruling of the trial judge was correct, the State argues that the exclusion of the testimony was harmless because it was merely cumulative. This argument is clearly without merit. Because Jewell's testimony was excluded, the defendant put on absolutely no evidence. He neither called witnesses nor testified himself. Hooker correctly notes that it is rather difficult to see how the State can seriously maintain that having witnesses state that Mrs. Rotenberry never told them that she gave the money away has the same force and effect as having her daughter testify that her mother told her that she gave the money to Hooker.
Apparently aware of its weak position, the State alternatively argues that there was no reversible error here because the testimony of Jewell Harvey was irrelevant. It appears that the State is arguing that proof showing the check to be a gift would not give Hooker a defense to the charge of embezzlement. The State notes that the trustee was required by the trust agreement to take and receive the trust property, handle and manage the same and collect the income therefrom and during the lifetime of Minnie B. Rotenberry pay her all of the net income annually and that the trust was absolute and irrevocable.
Hooker responds that the State's argument is entirely inconsistent with the indictment *1353 alleging that the $43,500 was the "property of Minnie B. Rotenberry." Hooker then notes that the State may not allege ownership of the property embezzled to be that of one legal entity and support that conviction with proof that the ownership is in another legal entity. State v. Black, 399 So.2d 1331 (Miss. 1981).
The statute under which Hooker was indicted, Miss. Code Ann. § 97-11-25 (Supp. 1986), provides the following:
If ... any trustee of an express trust ... shall unlawfully convert to his own use any money or other valuable thing which comes to his hands by virtue of his office or employment, or shall not, when lawfully required to turn over such money or deliver such thing, immediately do so according to his legal obligation, he shall, on conviction, be committed to the Department of Corrections for not more than twenty (20) years, or be fined not more than five thousand dollars ($5,000).
The conversion would not be unlawful if the owner of the property consented thereto or made a gift of the property upon receipt. "Any evidence not repugnant to the general rules governing the admissibility of evidence may be received which tends to show ... the fact of, and acts constituting, the conversion, including the question of the owner's consent or nonconsent thereto... ." 29A C.J.S. Embezzlement § 39 (1965).
In Dyer v. State, 86 Ga. App. 835, 72 S.E.2d 781, 784-786 (1952), the lower court committed prejudicial error in a prosecution for conversion of money by a bailee after trust, by refusing testimony of the bailor's son, who acted as the bailor's agent, that the bailor's son told the bailee he could use the money in the regular course of his private banking business. Similarly, the testimony of the beneficiary's daughter here that the money was a gift is certainly relevant.
Furthermore, the indictment charged that Hooker willfully, unlawfully and feloniously embezzled the money, the instructions have similar language, and the State assumes that fraudulent intent is an element of the crime delineated by the above statute. Jewell's testimony is clearly relevant on the issue of fraudulent intent.
This Court holds that the testimony of Jewell Harvey was admissible under the hearsay exception cited above and was the critical defense in Hooker's case, and exclusion thereof was reversible error.

IV.

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN ALLOWING THE STATE TO INTRODUCE A LETTER WRITTEN BY SCOTTYE HOOKER TWO DAYS PRIOR TO THE TRIAL?
The following letter from Scottye Hooker to the assistant district attorney was admitted into evidence:
After much thought and consideration I have come to the conclusion that although I know that Lamar Hooker is GUILTY of the charges against him I prefer that he only be charged with a misdemeanor. It is for the sake of the children only that I am making this request.
I understand that this is your decision, but I would appreciate any consideration you might give to my request and that you deem appropriate at this time.
Hooker argues that the statement about his guilt in the letter was inadmissible as hearsay and as an impermissible personal opinion.
The State contends that because the letter was introduced to rebut allegations of vindictiveness interjected by the defense, the statement of Hooker's guilt was not offered in evidence to prove the truth of the matter asserted and thus not hearsay under the definition in Mississippi Rule of Evidence 801(c). Hooker responds that the only way the letter could rebut a suggestion of vindictiveness would be if the jury believed the truth of Mrs. Hooker's assertion that she believed Hooker to be guilty.
*1354 This Court agrees with Hooker and holds that the statement of guilt was inadmissible hearsay and that the admission of the statement requires reversal and remand.

V.

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN ADMITTING DEFENDANTS RESPONSE TO A REQUEST FOR ADMISSIONS IN THE CIVIL PROCEEDING?
The trial court admitted into evidence an admission by Hooker in the civil case that he "owe[d] the trust $43,500 for proceeds which [he] deposited to [his] personal checking account which were produced by the sale of trust property." Hooker argues that the trial court's ruling violated Mississippi Rule of Civil Procedure 36(b), which provides:
Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding.
However, as Hooker admits, he did not base his objections on either the rule or the statute, and neither was cited in his motion for new trial. In order to preserve an objection, a party must state the specific ground of objection, if the specific ground was not apparent from the context. Miss. R.Evid. 103(a)(1).
This Court's reversal is not predicated on the admission into evidence of the answer to the request for admission in the civil case. However, on retrial, the lower court should exclude the admission based on Mississippi Rule of Civil Procedure 36(b).[1]
Based on the foregoing discussion, this Court reverses and remands for a new trial consistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., SULLIVAN, ANDERSON, GRIFFIN, and ZUCCARO, JJ., concur.
ROBERTSON, J., not participating.
NOTES
[1] Other courts have assumed that the prohibition against using such admissions in "any other proceeding" precludes their use in criminal cases, as well as civil cases. See e.g., Gordon v. Federal Deposit Insurance Corporation, 427 F.2d 578, 581 (D.C. Cir.1970); LeBlanc v. Spector, 378 F. Supp. 310, 315 (D.Conn. 1974); First Federal Sav. & Loan Ass'n v. Schamanek, 684 P.2d 1257, 1261-62 (Utah 1984). One commentator has stated that the validity of such assumption is questionable. Finman, The Request for Admissions in Federal Civil Procedure, 71 Yale L.J. 371, 384 (1962).