875 So.2d 261 (2004)
Eddie ALEXANDER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00887-COA.
Court of Appeals of Mississippi.
June 15, 2004.
*263 William L. Ducker, Purvis, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before KING, C.J., BRIDGES, P.J., and CHANDLER, J.
KING, C.J., for the Court.
¶ 1. Eddie Alexander was tried and convicted in the Circuit Court of Lamar County for the sale of a controlled substance pursuant to Mississippi Code Annotated Section 41-29-139. Aggrieved by his conviction and sentence, Alexander appeals and raises the following issues, which we quote verbatim.
I. The Court's order overruling defendant Eddie Alexander's motion to dismiss for violation of constitutional right to a speedy trial.
II. The Court's allowing the amendment of the indictment by the [s]tate to enhance punishment and make the defendant a second and subsequent offender on March 20, 2003, and on the morning of the trial, March 21, 2003, the Court also allowed another amendment changing the date of the offense from June 22, 2000, to June 27, 2000. This was done without notice to the defendant just prior to voir dire examination.
III. The Court's failure to sustain defense motion for mistrial at the conclusion of [s]tate witness Shane Bound's testimony
IV. The Court's sentence of thirty years is not commensurate with the crime punishable in this case.
Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. On June 27, 2000, three agents of the Mississippi Bureau of Narcotics were *264 engaged in an undercover drug operation in Lumberton. Shane Bounds, a confidential informant, made contact with Eddie Alexander and told him he wanted to purchase a "40" of crack cocaine. Alexander agreed, and Bounds told him to meet him at his father's auto repair shop. Bounds was outfitted in an automobile equipped with audio and video surveillance capability, and was given $40 to use for the purchase of the crack cocaine. Alexander met Bounds at the repair shop, and after a brief conversation, Alexander transferred three small rocks to Bounds, and the informant paid him $40, in a "hand-to-hand" exchange. After the exchange, Bounds returned to the pre-determined location, to meet with the undercover agents. The evidence was taken into custody, and the Mississippi State Crime Laboratory analysis conducted on the rocks indicated that the substance was indeed .10 grams of crack cocaine.
¶ 3. On March 9, 2001, Alexander was arrested and charged with sale of a controlled substance. Alexander was bound over for the June 2001 term of the Lamar County grand jury, but he was not indicted. The grand jury convened twice over the next fifteen months, but Alexander was still not indicted. He remained free on bond, but was required to report to the circuit clerk's office once a month.
¶ 4. On June 10, 2002, Alexander was formally indicted by the Lamar County Grand Jury, pursuant to Mississippi Code Annotated Section 41-29-139, for the sale of .10 grams of cocaine, a Schedule II controlled substance.
¶ 5. On September 23, 2002, Alexander was brought before the trial judge, who set the trial for the next Lamar County court term, in March 2003. At this time Alexander signed an "Order Continuing and Pre-Setting Trial" and an "Acknowledgment of Right to be Arraigned." These documents specifically waived Alexander's right to a speedy trial under the United States and Mississippi Constitutions, and waived his right to be arraigned and tried within 270 days of that arraignment pursuant to Mississippi Code Annotated Section 99-17-1. There were no motions or other matters brought before the court regarding Alexander's case at this time.
¶ 6. On March 18, 2003, a motion hearing was held before the trial judge. Alexander had a number of motions, including a motion to reveal the deal, agreement or understanding with state witness Shane Bounds; a motion to suppress evidence; and a motion to compel interviews and complete criminal histories of the State's witnesses. The trial judge granted Alexander's request to reveal the deal and requests for interviews and criminal histories of the State's witnesses, but denied his motion to suppress the evidence. The trial judge also indicated, on the record, that the State was planning on filing a motion to enhance the punishment based on Alexander's previous convictions. At this time, Alexander also filed a motion demanding a speedy trial, which was denied by the trial judge on March 20, 2003.
¶ 7. On March 21, 2003, another motion hearing was held, where the State moved to amend the indictment to change the date of the sale from June 22, 2000, to June 27, 2000. The State also made a motion to enhance Alexander's penalty, based on his status as an habitual offender, and pursuant to Mississippi Code Annotated Section 99-19-81. Both of the State's motions were granted, and trial proceedings began that same day. On March 21, 2003, a jury found Alexander guilty of transfer of .10 grams of a control II substance.
¶ 8. On March 25, 2003, a bifurcated hearing was held pursuant to Mississippi Code Annotated Section 41-29-147, to determine *265 the status of Alexander as a second and subsequent offender. Alexander was adjudged an habitual offender based on three previous convictions for possession of marijuana.
¶ 9. At a March 28, 2003 sentencing hearing, the trial judge sentenced Alexander to forty years in the custody of the Mississippi Department of Corrections, with thirty years to serve, ten years suspended, and upon successful completion of that time, to five years on post-release supervision.

ISSUES AND ANALYSIS

I.
The Court's order overruling defendant Eddie Alexander's motion to dismiss for violation of constitutional right to a speedy trial.
¶ 10. A criminal defendant's right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article 3, § 26 of the Mississippi Constitution of 1890, and Alexander asserts that the trial court erred in overruling his motion to dismiss the case because his right to a speedy trial was violated. Alexander asserts that the constitutional clock began to run on March 9, 2001, the day of his arrest. Approximately sixteen months elapsed between Alexander's arrest and indictment on June 10, 2002. An additional nine months elapsed between indictment and trial. This period of twenty-five months is presumptively prejudicial, and in violation of his constitutional rights.
"When a defendant's constitutional right to a speedy trial is at issue, the balancing test set out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is applicable." Noe v. State, 616 So.2d 298, 300 (Miss.1993). Speedy trial issues are analyzed by applying the four factors detailed in Barker which include (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. Skaggs v. State, 676 So.2d 897, 900 (Miss.1996). No single factor controls. Id. Furthermore, the court is not strictly limited to consideration of the Barker factors. State v. Magnusen, 646 So.2d 1275, 1278 (Miss.1994). "Alleged violations of the right to a speedy trial are decided on a case by case basis, weighing the facts and circumstances and the conduct of the prosecution and the defense." Elder v. State 750 So.2d 540, 542(¶ 7) (Miss.Ct.App.1999) (citations omitted). To determine whether Alexander's rights were violated, this Court examines the Barker factors within the context of this case.

A. Length of Delay
¶ 11. "The supreme court has held that the right to a speedy trial under the United States Constitution attaches immediately upon the defendant's arrest." Elder v. State, 750 So.2d 540, 545 (¶ 10) (Miss.Ct. App.1999), citing Box v. State, 610 So.2d 1148, 1150 (Miss.1992). The court has also held that after the defendant's arrest, a delay of more than eight months before there is a trial is presumptively prejudicial to the defendant, and volative of his right to a speedy trial. Id. This presumption can be rebutted by balancing the remaining Barker factors. Handley v. State, 574 So.2d 671, 676 (Miss.1990).
¶ 12. To place this issue into perspective, this Court sets out the following chronology of events beginning with the date of the criminal activity, and ending with Alexander's trial and subsequent conviction.
June 27, 2000 Date of the sale of .10 grams of cocaine from Alexander to Bounds *266 March 9, 2001 Arrested for transfer of a controlled substance
June 10, 2002 Indicted on charge of transfer of a controlled substance
September 23, 2002 Order setting trial for March 9, 2003 and "Acknowledgment by Defendant of Right to be Arraigned," and "Order Continuing and Pre-Setting Trial" signed
March 18, 2003 Demand for speedy trial filed
March 20, 2003 Demand for speedy trial denied
March 21, 2003 Alexander convicted of transfer of a controlled substance
March 28, 2003 Alexander sentenced to thirty years to serve and ten years suspended pending completion of the time served and five years of post-release supervision
¶ 13. Alexander was arrested and charged with transfer of a controlled substance on March 9, 2001, but was not tried for the offense until March 21, 2003. As 742 days, approximately 25 months elapsed, between the arrest and the trial, the delay in the present case is presumptively prejudicial and triggers consideration of the other Barker factors.

B. Reason for Delay
¶ 14. Alexander argues that the reasons for the delay of his trial should be attributed to the State. Alexander contends that the hospitalization of one of the State's witnesses was not sufficient to establish good cause for the State's fifteen-month delay in indicting him. Alexander contends that the State had four other witnesses who could have testified before the grand jury. Alexander contends that the State's failure to indict him was a tactical move to circumvent a possible 270-day problem under Mississippi Code Annotated Section 99-17-1 (Rev.2000), which requires the State to try a case within 270 days of the indictment. Alexander also contends that the delay prejudicially affected his ability to develop an alibi defense.
¶ 15. The State bears the responsibility for bringing a defendant to a speedy trial. Turner v. State, 383 So.2d 489, 491 (Miss.1980). The State asserts that the reason for the delay in indicting Alexander was due to the hospitalization and year-long recuperation period for Mississippi Bureau of Narcotics Agent Bobby Patterson following a motor vehicle accident. Patterson was one of the three agents who facilitated the undercover operation against Alexander. Patterson was the agent who took the evidence into custody during the operation. Alexander does not disagree that Agent Patterson was incapacitated and out on sick leave for a year from the Bureau of Narcotics. However, Alexander argues that there were four other state witnesses who could have presented the case at either of the two grand juries that were convened in the fifteen months he was out on bond.
¶ 16. We agree with Alexander, and find that the State could have used the three other officers who were present during the undercover operation to present the case to the grand jury. Although Agent Patterson did take the cocaine into custody, in grand jury proceedings it is not necessary to establish the chain of custody, and further, hearsay testimony is allowed, and any of the other officers present could have testified regarding the evidence Agent Patterson took into custody. See Clay v. State, 829 So.2d 676, 680(¶ 7) (Miss. Ct.App.2002); Ex parte Jones County Grand Jury, First Judicial Dist., 705 So.2d 1308, 1315 (¶ 32) (Miss.1997).
¶ 17. Therefore, we do not find good cause for the State's failure to indict Alexander for fifteen months, and accordingly *267 the fifteen month delay is attributed to the State.

C. Defendant's assertion of his right to a speedy trial
¶ 18. Alexander contends that signing the "Acknowledgment by Defendant of Right to be Arraigned," and "Order Continuing and Pre-Setting Trial" did not effectively waive his right to a speedy trial. Alexander asserts that he should not have been required to sign the forms, as he was in court requesting a trial date, and that by requiring him to sign the forms, he was stripped of his right to assert a speedy trial violation. However, Alexander acknowledges that all defendants in Lamar County are required to sign these documents before leaving the courtroom on docket day, and should they decline to sign these documents their case will be pre-set at the next available date. This statement by Alexander would appear to negate his argument that he was prevented from seeking a speedy trial.
¶ 19. Alexander signed these two forms on September 23, 2002, and our examination of the record reveals that on March 21, 2003, the trial judge stated, "That Eddie has up to this point in time waived arraignment, waived speedy trial and he and Mr. Johnson are not ready for him to be arraigned." There was no objection from Alexander at this time.
¶ 20. Further, Alexander never, in the two intervening years, between his arrest on March 9, 2001, and his trial on March 18, 2003, filed a motion demanding a speedy trial. Alexander did not file a motion to dismiss for violation of his right to a speedy trial until March 19, 2003, just days before the case was set for trial. The trial judge denied this motion, stating that on September 23, 2002, Alexander had signed both the "Order Continuing and Pre-Setting Trial" and an "Acknowledgment of Right to be Arraigned," which specifically waived his right to a speedy trial under the U.S. and Mississippi Constitutions.
¶ 21. "Although it is the State's duty to insure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right." Smith v. State, 812 So.2d 1045 (¶ 11) (Miss.Ct.App. 2001) (citation omitted).
¶ 22. Since Alexander did not diligently pursue a speedy trial, this factor must weigh against him.

D. Prejudice to the defendant
¶ 23. "The supreme court has held that prejudice is assessed in the speedy trial context (1) to protect against oppressive pretrial incarceration, (2) for the minimization of anxiety and concern of the accused, and (3) for the limitation of the possibility of impairment of the defense." Elder v. State, 750 So.2d 540, 545 (¶ 19) (Miss.Ct.App.1999) (citation omitted). "The possibility of impairment of the defense is the most serious consideration in determining whether the defendant has suffered prejudices as a result of delay." Sharp v. State, 786 So.2d 372, 381 (¶ 19) (Miss.2001).
¶ 24. When Alexander was indicted, on June 10, 2002, his right to a speedy trial re-attached. See State v. Woodall, 801 So.2d 678, 681(¶ 8) (Miss.2001). Therefore, we must look to the fifteen-month delay between the arrest and Alexander's indictment to determine if Alexander was denied his right to a speedy trial. A two-prong test has been established to determine if a defendant's constitutional right to a speedy trial has been violated due to the State's failure to expeditiously indict. Hooker v. State, 516 So.2d 1349, 1351 (Miss.1987). Under the Hooker test Alexander has the burden of proof to show that (1) the pre-indictment delay caused actual prejudice and (2) such delay was *268 intentional by the State to gain a tactical advantage. Id.
¶ 25. Alexander contends that he was prejudiced in the development of an alibi defense by the State's fifteen-month delay in indicting him. In light of the fact that Alexander admitted in the record that his defense was one of "mistaken identity," his theory of a possible alibi defense holds no weight, and is not a showing of actual prejudice. Prejudice of such a speculative nature is not actual prejudice, and we can not find that Alexander's rights were violated based on mere conjecture. Regardless of the date, Alexander's stated defense would remain the same, that he was not the person that sold the drugs. The fact that Alexander was required to report the circuit clerk's office while he was out on bond, coupled with his assertion that the delay in indicting him caused him prejudice in the preparation of an alibi defense is not a showing of actual prejudice.
¶ 26. We find no merit to Alexander's contention that he was denied his constitutional right to a speedy trial, and that he was prejudiced by the denial. Accordingly, we find no merit to this issue.
¶ 27. The primary delay in this case is attributable to the State's failure to indict Alexander for a fifteen month period. The fifteen-month delay in indicting Alexander is counted against the State, and triggers an analysis of the factors under the Hooker test. However, as Alexander can not show actual prejudice, or that the reason for the delay was a tactical advantage for the State, he fails to meet his burden of proof under Hooker, and as such there is no merit to his assertion that he was denied his right to a speedy trial.

F. Conclusion
¶ 28. Having applied the Barker and Hooker factors, to the facts and circumstances of this case, we find that Alexander's constitutional right to a speedy trial was not violated.
¶ 29. Alexander was indicted on June 10, 2002. On September 23, 2002, he waived arraignment, and requested a trial date. The trial judge set the case for trial in March 2003, which was the next Lamar County Circuit Court term. The statutory right to a speedy trial is counted from the date of arraignment, or from the waiver of arraignment. Because less than 270 days elapsed between the waiver of arraignment on September 23, 2002, and the trial in March 2003, there is no violation of the statutory right to a speedy trial.

II.
The Court's allowing the amendment of the indictment by the state to enhance punishment and make the defendant a second and subsequent offender on March 20, 2003, and on the morning of the trial, March 21, 2003, the Court also allowed another amendment changing the date of the offense from June 22, 2000, to June 27, 2000. This was done without notice to the defendant just prior to voir dire examination.
¶ 30. Alexander asserts that the trial court erred when it granted the State's motion to amend the indictment to add that he was a second and subsequent offender, and to change the date of the offense from June 22, 2000 to June 27, 2000. Alexander argues that these amendments were substantive matters, and as such they required the consent of the grand jury. Alexander asserts that by amending the indictment the day of the trial, he was not prepared to face additional charges concerning his background, and was further prejudiced because he was denied the "possibility of establishing an alibi defense for June 27, 2000."
*269 ¶ 31. "[A] change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." Givens v. State, 730 So.2d 81, 87 (¶ 20) (Miss.Ct.App.1998), citing Shelby v. State, 246 So.2d 543, 545 (Miss.1971). "The well-established test in this jurisdiction for determining whether the defendant is prejudiced by the amendment depends on whether a defense under the original indictment would be equally available under the amended indictment." Id. (citations omitted) "If both the defense and the evidence remain unhindered after amending the indictment, then the amendment is considered to be an amendment of form rather than substance." Id. (citations omitted).
¶ 32. The portion of Rule 7.09 relevant to the amendment of the indictment reads:
All indictments may be amended as to form but not as to the substance of the offense charged.... Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.
URCCC 7.09
¶ 33. Rule 7.06(5) of the Uniform Rules of Circuit and County Court provides that "[f]ailure to state the correct date shall not render the indictment insufficient." Furthermore, Section 99-7-21 of the Mississippi Code allows the court to "cause the indictment to be forthwith amended" to cure any formal defect. Miss.Code Ann. § 99-7-21 (Rev.2000). "Although Rule 7.09 denies the trial court authority to make substantive amendments of indictments, the Mississippi Supreme Court has observed that amending the date of the alleged offense is a change of form only where time is not an essential element or factor in the indictment." Givens, 730 So.2d at 87 (¶ 19) (citation omitted).
¶ 34. The facts in the record indicate that Alexander never filed an alibi defense for June 22, 2000, and that his defense was one of "mistaken identity." Nothing in the record indicates that Alexander intended to present a time-specific defense, such as alibi. Alexander's sole point of contention is that his chance for an alibi defense was removed when the State changed the date, because he had no independent recollection of events that occurred on June 27, 2000. The trial judge stated in his order that Alexander had the same defenses available to him regardless of his status as a subsequent offender and regardless of the date. "Reversal is not necessary where the same defense and the same witnesses are available for both the original date and the amended date on the indictment." Id. (citations omitted). We find that the amendments to Alexander's indictment were of form rather than substance, and that his defense under the amended indictment remained the same.
¶ 35. Accordingly, we find no merit to this issue.

III.
The Court's failure to sustain defense motion for mistrial at the conclusion of State witness Shane Bound's testimony.
¶ 36. Alexander contends that the trial court erred in not granting a mistrial because a witness for the State unfairly introduced evidence of other crimes, and it unfairly prejudiced the jury. On cross-examination Shane Bounds, the confidential informant, who facilitated the buy from Alexander, was questioned regarding a conversation he had with Alexander's attorney, and the following testimony was elicited:

*270 Q: [Attorney for Alexander] Now, I'm going to ask you, remind you of a couple of things. You and I, as a matter of fact, we met about two weeks ago, didn't we?
A: [Shane Bounds] Uh-huh (indicating yes).
Q: And you will recall that you and I had, I think two, maybe three telephone conferences, before that?
A: Yes, sir.
Q: Friendly conferences, weren't they?
A: Yeah.
Q: You and I didn't have any problems?
A: No.
Q: And you will recall that I told you that I wasn't trying to talk you into anything, I wasn't trying to talk you out of anything?
A: Right.
Q: I believe those were the exact words that I used. Did you have any problem with me?
A. No, not really. I didn't want to tell y'all that I washad to work for them. I felt scared forif y'all knew.
Q: Well, that's actually going to be my next question. The fact is you told me point blank that it wasn't Eddie [Alexander] that sold you anything, didn't you?
A: Right.
Q:You told me that?
A: No. I said on that statement that you have that I didn'tI couldn't honestly remember.
Q: Mr. Bounds, actually the first time we talked was almost a year ago?
A: Yeah.
Q: And in that conversation we weren't talking about the tape?
A: Right.
Q: I mean a statement.
A: Right.
Q: I was just asking you point blank as one human being to another and do you remember telling me that Eddie didn't sell you any dope?
A: No.
Q: You don't remember saying that?
A: No, not that long ago.
Q: Okay. All right. But you do remember me and you meeting and you told me that, right?
A: Right, yes, sir.
Q: You told me point blank that Eddie didn't sell you anything?
A: Yes, sir.
Q: There was an intervening conversation, there was a conversation a long time ago and then I think there was one little short, do you remember that?
A: No.
Q: Okay. You're under quite a bit of pressure to testify, aren't you?
A: Yes, sir.
Q: I mean you feel the pressure?
A: Yes, sir.
Q: Do you recall telling me when we met at the BRC that you told me that you had been told that the State would send you to prison if you didn't testify against Eddie Alexander, do you remember telling me that?
A: Yeah.
Q: Now, I have to ask you were you lying then or are you lying now?
A: No.
Q: You weren't lying either?
A: No.
Q: Either time. Well, see, I don't see how that could be true both times.
A: Why is that?
Q: I don't understand how you could tell me that Eddie Alexander didn't sell you anything.
*271 ¶ 37. On re-direct examination, Bounds again identified Alexander as the man that he brought the cocaine from. The State then asked Bounds the following questions:
Q: All right. Now, ever since Mr. Alexander's been arrested for this charge, how many times has he come into [sic] see you?
A: I couldn't honestly say. It's been a number of times.
Q: A number of times since he was arrested?
A: Yes, ma'am.
....
Q: Now, during the times that Mr. Alexander came to see you alone, did he talk to you about the charge that he had?
A: Yes, ma'am.
Q: Were you afraid of him?
MR. JOHNSON [attorney for Alexander]: Your honor I am going to object to leading, leading this witness.
THE COURT: I will overrule at this point in time.
Q: Were you afraid of Mr. Alexander?
A: Yes, ma'am.
Q: And what did you base that?
A: When II was always a little nervous on that, because I didn't know if he knew anything or nothing in that situation. But at one point when he met me he said that a guy was named Kurt was down from New Orleans, because he had hit two guys, so that means knocked off, that he could pay him $3,000, have the same done to me.
Q: So when you told Mr. Johnson that Mr. Alexander didn't have anything to do with selling you the drugs, why did you tell him that?
A: Because I felt if I told him that, that he might go ahead and have that done. I was scared. I was just trying to get him off the property, a nice way without telling him just to get off my property.
Bounds then indicated that the conversation with Alexander "about the hit man" occurred before Johnson ever came to see him. Alexander then requested permission to re-cross in light of this new information. The trial judge granted the request, but stated, "What's new about it, you asked him if he told you that and he's got a right to explain why he did." A bench conference was held before the re-cross examination, and the assistant district attorney indicated that she had called Alexander's attorney and put him on notice that Alexander had threatened Bounds, and that Alexander must be kept away from Bounds.
¶ 38. On re-cross examination Bounds indicated that he had reported the incident to Agent Patterson, but had not filed a police report regarding the alleged threat. Based on this testimony Alexander made a motion for a mistrial due to the supposed prejudicial nature of Bounds testimony on re-direct.
¶ 39. Rule 404(b) of the Mississippi Rules of Evidence states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith...." M.R.E. 404(b).
¶ 40. "Relevancy and admissibility of evidence are largely within the discretion of the trial court, and reversal may be had only where that discretion has been abused." White v. State, 742 So.2d 1126 (¶ 29) (Miss.1999). "Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs." Id.
*272 ¶ 41. Alexander's counsel asked numerous questions regarding Bound's statements to him. In doing so, Alexander opened the door for questions on re-direct regarding the statement. Jackson v. State, 766 So.2d 795, 807 (¶ 37) (Miss.Ct.App.2000) (citations omitted). The State's question was in direct response to an issue raised in Jackson's cross-examination; thus, it was proper re-direct. The Mississippi Supreme Court has held:
The trial court has broad discretion in allowing or disallowing redirect examination of witnesses. When the defense attorney inquires into a subject on cross-examination of the State's witnesses, the prosecutor on rebuttal is unquestionably entitled to elaborate on the matter.... Because these matters were all brought out on cross-examination, we find the trial court did not abuse its discretion in allowing redirect examination on the matters.
Jackson v. State, 766 So.2d at 807 (¶ 37) (internal citations omitted).
¶ 42. The record is conclusive that Alexander opened the door for the testimony Bounds gave on re-direct-examination. The trial judge did not abuse his discretion in allowing the prosecutor to give Bounds an opportunity to explain the impeaching statements he made to Alexander's counsel.
¶ 43. Accordingly, we find no merit to this issue.

IV.
The Court's sentence of thirty years is not commensurate with the crime punishable in this case.
¶ 44. Alexander asserts that a sentence of forty years, with ten years suspended was excessive for the sell of .10 grams of cocaine. Alexander contends that his sentence is an unusually heavy penalty for someone selling such a small amount of cocaine, and it is not commensurate with the crime punishable in this case. Alexander also points out that sentences across the state vary widely for the sale of a small amount of cocaine, and the state needs to adopt more uniform sentencing guidelines, such as those available in federal court.
¶ 45. What Alexander fails to mention in his brief is that the trial court adjudged him to be a habitual offender, pursuant to Mississippi Code Annotated Section 41-29-147, which permits a doubling of the sentence where it can be shown that a defendant has prior drug offenses. The State introduced certified copies of three prior convictions, and the authenticity was not disputed by Alexander. On September 22, 1997, Alexander pled guilty to a charge of possession of marijuana. On June 22, 1998, Alexander again pled guilty to a charge of possession of marijuana in a motor vehicle. Finally, on November 23, 1998, Alexander once again pled guilty to a charge of possession of marijuana.
¶ 46. Alexander's argument was that all his prior convictions were misdemeanors, and should not have been used to enhance his punishment. Alexander's counsel stated in the record that he was fully aware that the trial court could use misdemeanors to enhance his sentence under the law, but that he did not think this was a proper case to use the enhancement statute.
¶ 47. The record clearly reflects that Alexander's prior drug offenses qualified him as a habitual offender pursuant to Mississippi Code Annotated Section 41-29-147. As all three convictions could be used to enhance Alexander's punishment he could have received a maximum sentence of sixty years, and as such the trial judge was well within his statutory authority to sentence Alexander to thirty years in *273 the custody of the Mississippi Department of Corrections.
¶ 48. Accordingly, we find no merit to this issue.
¶ 49. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY OF CONVICTION OF SALE OF A CONTROLLED SUBSTANCE AND ENHANCED SENTENCE AS A SECOND AND SUBSEQUENT OFFENDER OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TEN YEARS SUSPENDED, FIVE YEARS OF POST-RELEASE SUPERVISION AND A FINE OF $10,000 IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.