951 So.2d 630 (2007)
Eddie LOGAN, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00595-COA.
Court of Appeals of Mississippi.
March 13, 2007.
*631 Antwayn Patrick, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, C.J., IRVING and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Eddie Logan was convicted of embezzlement by a public official. He was sentenced to serve three years in the custody of the Mississippi Department of Corrections, which was suspended, with six months of community service, concurrently with six months on supervised probation. Logan appeals and argues the verdict was against the overwhelming weight of the evidence. We find no error and affirm.

FACTS
¶ 2. From 2002 to 2005, Logan was the mayor of Durant. As a city official, he held a key to a city building that was formerly leased by Roberts Cabinet Company and Southern Holdings. Both companies manufactured furniture. Roberts Cabinet manufactured cabinets. Southern Holdings manufactured wood furniture, including tables and chairs.
¶ 3. In 2002, Roberts Cabinet went out of business. Trustmark National Bank had a lien on Roberts Cabinet's personal property. Southern Holdings then leased the building between early summer and October 2002, when it went out of business as well. Willie Barton, the owner of Southern Holdings, told Logan and others that they could have the inventory overruns. The mayor took a dinette set. Both companies still had personal property inside the building.
¶ 4. On February 1, 2003, Trustmark held an auction of Roberts Cabinet's property inside the city building. Beforehand, Trustmark tagged all pieces of property it claimed under the security agreement. Likewise, the city marked all property that belonged to it, and was thus not available for auction. The mayor handed his key to the building to Vice Mayor Howard Roberts[1] and put him in charge of the auction. The mayor told the city board members at several meetings that if he saw anything he liked, he was going to take it. No one objected.
*632 ¶ 5. The next day, buyers from the auction came to retrieve their purchases. Logan told Roberts that he was going to take a desk[2] and showed him which one. Roberts claimed he told Logan it was city property. Logan claimed Roberts merely suggested Logan take another nicer desk. After the conversation, Logan proceeded to take the desk he originally wanted. He also took a refrigerator, microwave, five sheets of plywood, and a toolbox with tools. None of the items he took were tagged by either Trustmark or the city.
¶ 6. Roberts did not stop Logan, nor call the police. Roberts had someone take pictures and asked a couple to witness Logan taking the property. All witnesses testified that Logan was open about what he was doing and even posed for the pictures.
¶ 7. Logan was indicted for embezzlement of the desk/cabinets and grand larceny of the other items. Logan testified Barton gave him permission to take the property. The jury acquitted him on the charge of grand larceny but convicted him on the charge of embezzlement.

STANDARD OF REVIEW
¶ 8. In reviewing a sufficiency of the evidence claim, the Court considers the evidence in the light most favorable to the verdict. Bush v. State, 895 So.2d 836, 844(¶ 16) (Miss.2005). Usually, if any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we will uphold the verdict. Id.
¶ 9. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Id. at (¶ 18). The evidence is weighed in the light most favorable to the verdict. Id. The power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. Id. If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial. Id.

ANALYSIS
¶ 10. Although Logan styles his issue as "weight of the evidence," he argues both weight and sufficiency of the evidence. Specifically, he claims (1) the State failed to prove the elements of embezzlement, and (2) the overwhelming weight of the evidence proved mistake of fact. We therefore treat these two arguments separately.
I. Did the State fail to prove the elements of embezzlement?
¶ 11. Any "officer of any city, town or village" who "shall unlawfully convert to his own use any money or other valuable thing which comes into his hands or possession by virtue of his office or employment" is guilty of embezzlement. Miss. Code Ann. § 97-11-25 (Rev.2006). "The conversion would not be unlawful if the owner of the property consented thereto or made a gift of the property upon receipt." Hooker v. State, 516 So.2d 1349, 1353 (Miss.1987).
¶ 12. Logan challenges that the State failed to prove he unlawfully converted the cabinets and that he intended to do so. Specifically, he argues the State failed to prove the desk was city property. He also argues that the State failed to prove that he knew he was taking city property.
*633 ¶ 13. The cabinets were not claimed by Trustmark as property that was owned by Roberts Cabinet and subject to Trustmark's lien. Vice Mayor Roberts testified that the cabinets belonged to the city. On cross-examination, Roberts stated that "[Logan] come [sic] to me and told me he spotted some cabinets that he wanted, and I said I recommend you not bother them, they don't belong to us." Roberts admitted that he did not mark the cabinets as belonging to the City of Durant. Alderman James Ferguson also testified the cabinets were the city's property. However, when asked how he knew, Ferguson testified that he did not remember.
¶ 14. Barton testified that, at the time, he was in the process of getting federal funding to resume operations of Southern Holdings's furniture plant in the building. He had plans to use the foreman's office as a display area. The cabinets in question were in the way, "[a]nd I asked the mayor if he could get those cabinets moved so I could use that room for a display." This testimony suggests that the cabinets belonged to the city and not Southern Holdings. If the cabinets belonged to Southern Holdings, it stands to reason Barton would have removed the cabinets and not required the city to do so. We find that there was sufficient evidence that the desk/cabinets in question were indeed city property.
¶ 15. There was also sufficient evidence that Logan knew the cabinets were city property. Roberts testified that he gave Logan notice of this fact, and Barton's testimony indicates Logan knew the cabinets belonged to the city and thus it was the city's responsibility to remove them to accommodate a potential tenant.
¶ 16. It was undisputed that Logan was the Mayor of Durant at this time and that he took the cabinets for his own personal use. Roberts testified that the city did not give Logan permission to take them. Thus, there was sufficient evidence for the jury to conclude that Logan, as Mayor of Durant, came into possession of city owned cabinets, by virtue of his office, and unlawfully converted those cabinets for his own use.
II. Does the overwhelming weight of the evidence prove Logan operated under a mistake of fact?
¶ 17. Logan next argues that the overwhelming weight of the evidence proved that he operated under a mistake of fact and did not knowingly embezzle city property. Specifically, he believed that the cabinets were Southern Holdings's, and Barton had given him permission to take any of Southern Holdings's personal property. The State responds that Logan knew that he was taking city property.
¶ 18. We have already discussed the State's evidence which supports the finding that Logan knew the cabinets were city property. As for the contrary, there was evidence that Trustmark and the city tagged all property each were claiming, and the cabinets were not tagged. Even though the cabinets were attached to the wall, Logan was not the only one who assumed they were not city property. Three witnesses testified that they had tried to bid on those exact cabinets, but were informed they were not part of the auction. All agreed that Logan did not try to hide the fact that he was going to take the cabinets. He told the board several times, if he saw anything in there that he liked he would take it. Not once did any member object. That day, he told Roberts what he was doing. Although Roberts warned him not to take it, Roberts characterized this on the stand as a recommendation. Logan posed for pictures. Logan brought his truck in the middle of the plant at about 10:45 a.m. when Roberts *634 and others were present. He disassembled and loaded the cabinets onto his truck and carried them to his house. Roberts, as head city official over the auction, did not try to stop Logan, nor call the police, even though Roberts had a cell phone at the time. Instead he called on several people present to "witness" that Logan was taking the cabinets. Logan testified that the cabinets belonged to Barton and he had Barton's permission to take them.
¶ 19. However, Barton insisted that he only gave Logan permission to take his inventory overruns-tables and chairs. As for the cabinets, Barton asked Logan to remove them so he could use the office as a showroom. On cross-examination, Logan conceded that he did not have Barton's permission to take the desk/cabinets, and Logan admitted he made no attempt to give them back to Barton.
¶ 20. On this record, we hold that the verdict was not against the overwhelming weight of the evidence. Accordingly, we affirm.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF HOLMES COUNTY OF CONVICTION OF COUNT II EMBEZZLEMENT AND SENTENCE TO SERVE A TERM OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SUSPENDED, WITH SIX MONTHS OF COMMUNITY SERVICE AND SIX MONTHS ON SUPERVISED PROBATION TO RUN CONCURRENTLY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
NOTES
[1] There is no indication that Roberts was connected to Roberts Cabinet.
[2] Logan referred to the property as a desk. All other witnesses referred to this desk as base cabinets. It is undisputed that whatever it was, its corner was anchored into a corner of the foreman's office.