GRIFFIS, P.J.,
for the Court:
¶ 1. Jerry D. Van Wagner appeals his convictions from the Pearl River County Circuit Court stemming from a one-car motor-vehicle accident on U.S. Highway 59 in Pearl River County, Mississippi, that killed Crystal Brasher. Van Wagner was convicted of Count I, kidnapping, and Count II, aggravated DUI, and sentenced as a habitual offender to twenty-five years for Count I and twenty-five years for Count II, with sentences ordered to run consecutively, all in the custody of the Mississippi Department of Corrections. Van Wagner was also ordered to pay: a $2,500 fine; $2,500 to the Pearl River County Public Defenders Fund; $6,500 to the Mississippi Crime Victims Compensation Fund; and restitution of $2,217. On appeal, Van Wagner raises five points of error: (1) the State offered insufficient evidence to support the conviction of Count I, kidnapping; (2) the jury’s verdict on Count II, aggravated DUI, is against the overwhelming weight of the evidence; (3) Van Wagner was prejudiced by a discovery violation; (4) there was no probable cause to administer a blood-alcohol test; and (5) he was illegally sentenced as a habitual offender. We reverse and render Van Wagner’s conviction of Count I, kidnapping, because there is insufficient evidence to support the verdict. His convic *141 tion and sentence for Count II, aggravated DUI, is affirmed.
FACTS
¶ 2. In April 2009, Van Wagner and Brasher lived at McLeod Park in Hancock County, Mississippi. On April 25, 2009, deputies with the Hancock County Sheriffs Department were patrolling the park when one of the deputies noticed Brasher had bruises on her face. After a conversation with Brasher, the deputy arrested Van Wagner for domestic violence, simple assault and took Van Wagner to jail. Brasher later posted bond for Van Wagner, and Van Wagner was released from jail.
¶ 3. Around the same time, Brasher and Van Wagner were forced to move from McLeod Park and were living with Van Wagner’s sister in Perkinston, Mississippi. The day after the alleged incident in McLeod Park, the two packed up their belongings into a red Isuzu Rodeo and headed toward Perkinston on U.S. Highway 59. Shortly after their departure, a one-car accident involving a red Isuzu was reported on U.S. Highway 59.
¶ 4. When law enforcement reached the scene of the accident, they found Brasher thrown from the car, lying on the side of the road. A number of cars traveling on U.S. Highway 59 had already stopped and reached the vehicle to assist the injured passenger.
¶ 5. These witnesses testified that they removed Van Wagner from the driver’s seat while Brasher laid on the ground with unlocked chains wrapped around her legs, from her ankles to her knees. Officers who arrived on the scene found the chains already removed and hanging from the car door. Upon searching the debris from the wreck, officers also found two beer cans and the top to a liquor bottle. A state trooper, Trooper James Westbrook, testified that the Isuzu’s front tire on the driver’s side was flat.
¶ 6. Both Brasher and Van Wagner were taken to Highland Community Hospital in Picayune, Mississippi, where Brasher later died. Upon arriving at the hospital, Trooper Westbrook consulted with the Pearl River County Coroner, who understood that Brasher was driving the vehicle. Van Wagner also told Trooper Westbrook that it was Brasher who had been driving when the accident occurred.
¶ 7. Trooper Westbrook testified that on entering Van Wagner’s hospital room, the trooper smelled alcohol. Although a consent form was not produced prior to trial, Trooper Westbrook testified that he received consent from Van Wagner to draw blood for a blood-alcohol test, and then Trooper Westbrook asked a nurse to do so. The blood vials were then sent to the State Crime Laboratory in Jackson, Mississippi. According to the lab results, Van Wagner’s blood-alcohol level was .11, which is over the legal limit of .08.
¶ 8. At trial, Master Sergeant Jay Kelly with the Mississippi Department of Public Safety testified as an expert in motor-vehicle-accident reconstruction. In his opinion, Brasher was the passenger at the time of the accident, and Van Wagner was the driver. Master Sergeant Kelly found no indication that the front driver’s side tire had experienced a blow-out at the time of the wreck.
¶ 9. Prior to trial, the circuit judge allowed the indictment to be amended to charge Van Wagner as a habitual offender. Van Wagner was convicted of Count I, kidnapping, and Count II, aggravated DUI, and sentenced as a habitual offender to twenty-five years for Count I and twenty-five years for Count II, with the sentences ordered to run consecutively, all in the custody of the Mississippi Department *142 of Corrections. Van Wagner appeals his convictions and sentences.
ANALYSIS

1. Whether sufficient evidence supported a conviction of kidnapping.

¶ 10. Van Wagner claims there was insufficient evidence to support his conviction, and the verdict was a result of “speculation, guesswork, and conjecture.” Van Wagner argues that the State never developed the kidnapping charge against him and that there was neither actual nor circumstantial evidence of a kidnapping. Van Wagner claims that the trial judge erred when the judge refused Van Wagner’s motion for a directed verdict.
¶ 11. When reviewing a motion for a directed verdict, this Court looks to the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). When reviewing the sufficiency of the evidence, we examine the evidence in the light most favorable to the State to determine whether “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. The State is allowed to prove its case using circumstantial evidence. However, this evidence must be “sufficient to prove the defendant’s guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence.” Fleming v. State, 604 So.2d 280, 288 (Miss.1992).
¶ 12. Van Wagner asserts the State failed to present sufficient evidence for a reasonable juror to draw a conclusion beyond a reasonable doubt that Van Wagner was guilty of kidnapping using the elements set out in the statute. Mississippi Code Annotated section 97-3-53 (Supp. 2011) states:
Any person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will ... upon conviction shall be imprisoned for life in the custody of the Department of Corrections if the punishment is so fixed by the jury in its verdict. If the jury fails to agree on fixing the penalty at imprisonment for life, the court shall fix the penalty at not less than one (1) year nor more than thirty (30) years in the custody of the Department of Corrections.
¶ 13. The State relied on the following facts to support the kidnapping charge: (1) the alleged incident at McLeod Park where Van Wagner was arrested and charged with domestic abuse and (2) the unlocked chains wrapped around Brasher’s legs when she was thrown from the vehicle. Van Wagner argues that the State failed to prove the elements of kidnapping beyond a reasonable doubt. We agree.
¶ 14. First, Van Wagner addresses the State’s evidence of the alleged dispute in McLeod Park. Van Wagner argues that even if the State proved that he had assaulted Brasher in McLeod Park the day before the accident, this does not prove beyond a reasonable doubt that Brasher was “forcibly seized and confined” or “imprisoned against her will” on the following day. The State failed to show through any witness or evidence that Brasher was forced into the vehicle with Van Wagner. Even when giving all reasonable inferences to the prosecution, the evidence presented does not show that on the following day Brasher was “imprisoned against her will.”
¶ 15. Second, Van Wagner argues that a reasonable juror could have found other reasons for the chains to be wrapped *143 around Brasher’s legs such as, “she was merely joking” or “the chains became wrapped around her legs while the vehicle was flipping during the accident.” Van Wagner contends that these hypotheses are consistent with a conclusion of innocence. In addition to these other hypotheses, the State failed to show through the witnesses’ testimonies that Brasher was confined to the vehicle against her will. Brasher was not wearing a seatbelt, as evidenced by the fact she was thrown from the vehicle, and the chains around her legs were unlocked and, according to the witnesses, not tightly bound.
¶ 16. The State did not offer any evidence to show that Van Wagner had seized Brasher or that he had confined Brasher against her will. An eyewitness to the accident and Trooper Westbrook both testified that there were no weapons found at the scene of the accident or locks of any kind. Trooper Westbrook testified as follows:
Q: You did not find any guns or locks or anything of that nature at the scene, did you?
A: No, sir.
Q: Any knife?
A: I don’t recall a knife.
Q: I’m sorry I interrupted you there. Nothing to show that [Brasher] was being held against her will, correct?
A: No, sir.
¶ 17. At the close of the State’s case-in-chief, the State failed to establish the elements for kidnapping beyond a reasonable doubt; therefore, Van Wagner was entitled to a directed verdict. Accordingly, his kidnapping conviction and sentence is reversed and rendered.

2. Whether the weight of the evidence supports the aggravated DUI conviction.

¶ 18. Van Wagner argues that the verdict in Count II, aggravated DUI, is against the overwhelming weight of the evidence. Specifically, Van Wagner argues that the State failed to show that he committed a negligent act while driving intoxicated. The State responds that there is ample evidence to support the jury’s verdict. When reviewing a claim that the verdict is against the overwhelming weight of the evidence, “we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18) (citation omitted).
¶ 19. In cases involving aggravated DUI, “the State must prove that [the defendant] not only consumed alcohol prior to the accident, but that he performed a negligent act that caused the death of another.” Joiner v. State, 835 So.2d 42, 43-44 (¶ 5) (Miss.2003) (citing Hedrick v. State, 637 So.2d 834, 837-38 (Miss.1994)). Van Wagner argues that the State has failed to show by reliable evidence that he committed a negligent act. Van Wagner focuses his argument on the conflicting testimony presented that he was speeding at the time of the accident.
¶ 20. Although there is conflicting testimony about the speed of the car, we do not find that the verdict is against the overwhelming weight of the evidence. “It is elementary in tort law that a person is negligent for failing to maintain control over the vehicle he is driving.” Lepine v. State, 10 So.3d 927, 943 (¶ 45) (Miss.Ct.App.2009) (citing Robertson v. Welch, 242 Miss. 110, 117, 134 So.2d 491, 493 (1961)). The State presented expert testimony by Master Sergeant Kelly using accident reconstruction to show that Van Wagner did not have control of his vehicle at the time of the accident. Master Sergeant Kelly testified:
*144 A: These tire marks here are from a steering motion. Some steering input [is] making these marks here, as the vehicle is coming hard over to the eastbound lane of traffic — or the east side.
Q: So you’re talking about the movement going into the other lane such that it left those tire marks?
A: Yes, sir.
Q: What does that tell you? Is there any significance you show in those tire marks?
A: It’s just an indication to me that there was some steering input hard to the right.
Q: I mean, when most people pass, getting back into the other lane, they don’t leave tire marks do they?
A: No, sir. This is indicating that the vehicle is out of control at this point.
[[Image here]]
A: He’s got some steering input trying to correct himself and trying to get back into the lane of traffic. When he’s out of control and he’s steering back over to the west, or to the left, it brings the car or SUV there in a — it starts to slide. And he is just out of control still at this point.
¶ 21. Master Sergeant Kelly also testified that the SUV did not suffer a tire blowout. The jury considered this evidence and found Van Wagner guilty of aggravated DUI. The verdict in Count II is not against the overwhelming weight of the evidence. This issue has no merit.

3. Whether Van Wagner was prejudiced by a discovery violation.

¶22. During the trial, both the State and Van Wagner were surprised by Trooper Westbrook’s testimony that he had obtained consent from Van Wagner prior to administering a blood-alcohol test. At trial, Van Wagner’s counsel objected and asserted that this evidence “irreparably prejudiced” Van Wagner because his defense to the blood-alcohol test rested on a lack of consent. The trial judge overruled the discovery-based objection citing no prejudicial effect because both sides were equally surprised. On appeal, Van Wagner argues the trial judge’s reasoning for overruling the objection was not based on an accepted rule of law and was an abuse of discretion.
¶ 23. The standard of review for the trial court’s ruling on a discovery violation is abuse of discretion. Montgomery v. State, 891 So.2d 179, 181 (¶ 6) (Miss.2004). The procedure for the trial court to follow regarding a discovery violation is governed by Rule 9.04(1) of the Uniform Rules of Circuit and County Court, which states:
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs, or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or a mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
*145 ¶ 24. At trial, the State called Trooper Westbrook to testify about Van Wagner’s blood-alcohol test. Before Trooper West-brook testified, neither the State nor Van Wagner knew that Trooper Westbrook had obtained a written consent to draw blood from Van Wagner for a blood-alcohol test. During a bench conference, the judge ruled that the consent form would be allowed in evidence because of the surprise to both the State and Van Wagner. The trial judge also allowed Trooper West-brook to be on standby and called back the next day to testify if either side had any further questions of him. “[T]he Mississippi Supreme Court has ruled that a violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice.” Gray v. State, 926 So.2d 961, 971 (¶ 25) (Miss.Ct.App.2006) (quoting Wyatt v. City of Pearl, 876 So.2d 281, 284 (¶ 10) (Miss.2004)).
¶ 25. Here, it is clear from the record that any violation of Rule 9.04 did not result in a miscarriage of justice. The State did not know of the consent form’s existence. Van Wagner was given an opportunity to cross-examine Trooper West-brook regarding the newly discovered consent form. Additionally, the trial judge gave Van Wagner the opportunity to recall Trooper Westbrook at a later time if Van Wagner had further questions about the consent form. We find the trial judge did not abuse his discretion in admitting this evidence because: (1) it was a surprise to both the State and Van Wagner, and (2) Van Wagner was given a reasonable opportunity to inquire about the consent form. This issue has no merit.

4- Whether there was probable cause to administer a blood-alcohol test.

¶ 26. Van Wagner’s sole position on this issue is that Trooper West-brook lacked consent as well as probable cause to request a blood-alcohol test in the hospital after the accident. ‘When reviewing a trial court’s ruling on the admission or suppression of evidence, [the appellate court] must assess whether there was substantial credible evidence to support the trial court’s findings.” Culp v. State, 933 So.2d 264, 274 (¶ 26) (Miss.2005). “The admission of evidence lies within the discretion of the trial court and will be reversed only if that discretion is abused.” Id.
¶ 27. Relying on McDuff v. State, 763 So.2d 850, 853 (¶ 8) (Miss.2000), Van Wagner argues that similar to the officer in McDuff, Trooper Westbrook lacked probable cause to obtain the blood sample, and Trooper Westbrook had developed probable cause after the sample had been taken. In McDuff, the officer who requested a blood-alcohol test of Beverly McDuff was never identified and did not testify at trial. Id. After the test was ordered, another officer developed probable cause that McDuff may have been driving while intoxicated. Id. Here, the officer who requested that the test be administered to Van Wagner was identified and testified at Van Wagner’s trial. Further, the smell of alcohol is sufficient to establish probable cause. Id. at 855 (¶ 16).
¶ 28. We find Van Wagner’s argument without merit. In Wash v. State, 790 So.2d 856, 859 (¶ 9) (Miss.Ct.App.2001), this Court found that probable cause existed to administer a blood-alcohol test to Kenyon Wash. Eyewitnesses saw Wash throw a paper bag out the window of the car after the accident. Id. The officers observed Wash staggering and smelling strongly of alcohol, and the accident evidenced negligent driving. Id. Here, Van Wagner argues that at the time of the test he had not been conclusively identified as the driver of the car; however, multiple *146 eyewitnesses told Trooper Westbrook that Van Wagner had been driving. Further, Trooper Westbrook smelled alcohol when encountering Van Wagner in the hospital room, and the accident showed negligent driving.
¶ 29. We find the facts here similar to Wash, where this Court found probable cause existed for the officer to request a blood-alcohol test. There was sufficient probable cause to administer a blood-alcohol test to Van Wagner, and the evidence was properly admitted during Van Wagner’s trial. This issue is without merit.

5. Whether Van Wagner should have been sentenced as a habitual offender.

¶ 30. Van Wagner claims that his sentence as a habitual offender was illegal for two reasons: (1) an improper amendment to the indictment post-trial, and (2) defective proof of prior convictions. To be sentenced as a habitual offender, Mississippi Code Annotated section 99-19-83 (Supp.2011) provides:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
¶ 31. First, Van Wagner contends that the State improperly amended the indictment post-conviction to allow enhancement of his sentence as a habitual offender. Six weeks prior to trial, the State filed a motion to amend Van Wagner’s indictment to charge him as a habitual offender. The trial judge granted the motion at a motion hearing held on August 17, 2010. At Van Wagner’s sentencing hearing, the State amended the indictment again to correct the county in which the prior burglary had occurred. The trial judge allowed the modification after testimony from two witnesses to ensure that the substance of the indictment had not changed.
¶ 32. “[A] change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant’s case.” Alexander v. State, 875 So.2d 261, 269 (¶ 31) (Miss.Ct.App.2004) (citations omitted). Here, the record is clear that the amendment merely corrected the county of one of the underlying convictions contained in the habitual-offender portion of the indictment. The amended indictment six weeks prior to the trial put Van Wagner on notice that the State planned to use his prior convictions to enhance his sentence in this case. The amendment to Van Wagner’s indictment did not alter Van Wagner’s defense in any way and was, therefore, proper.
¶ 33. Second, Van Wagner attacks the State’s proof of prior convictions claiming that it was “defective.” At the sentencing hearing, the State offered proof of Van Wagner’s prior convictions and sentences of more than one year through Van Wagner’s “pen-pack” and testimony of Kathy Holt, the Director of Central Records Division for the Alabama Department of Corrections. This Court has held that “certified copies of pen-packs suffice as competent evidence of prior convictions.” *147 Frazier v. State, 907 So.2d 985, 991 (¶ 16) (Miss.Ct.App.2005) (quoting Dixon v. State, 812 So.2d 225, 231 (¶ 27) (Miss.Ct.App.2001)).
¶ 34. Van Wagner argues that the State’s evidence is hearsay and inadmissible because it does not fall under any exception, specifically the business-record exception under Mississippi Rules of Evidence 803(6) and (8). To be sentenced as a habitual offender, “[a]ll that is required is that the accused be properly indicted as [a] habitual offender, that the prosecution prove the prior offenses by competent evidence, and that the defendant be given a reasonable opportunity to challenge the prosecution’s proof.” Keyes v. State, 549 So.2d 949, 951 (Miss.1989) (citations omitted). Further, the Mississippi Rules of Evidence do not apply to sentencing hearings. See M.R.E. 1101(b)(3).
¶ 35. Van Wagner was given the opportunity to challenge the pen-pack during the sentencing hearing. The record is clear that the evidence relied on by the State was Van Wagner’s pen-pack and Holt’s testimony. This Court has held that pen-packs are competent evidence to show prior convictions. Frazier, 907 So.2d at 991 (¶ 16). We find this argument is without merit.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY OF CONVICTION OF COUNT II, AGGRAVATED DUI, AND SENTENCE OF TWENTY-FIVE YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $2,500 FINE, $2,217 IN RESTITUTION, $2,500 TO THE PEARL RIVER COUNTY PUBLIC DEFENDERS FUND, AND $6,500 TO THE MISSISSIPPI CRIME VICTIMS’ COMPENSATION FUND, IS AFFIRMED. THE JUDGMENT OF CONVICTION AND SENTENCE IN COUNT I, KIDNAPPING, IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PEARL RIVER COUNTY.
LEE, C.J., IRVING, P.J., ISHEE, ROBERTS AND RUSSELL, JJ„ CONCUR. MAXWELL, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BARNES AND CARLTON, JJ. FAIR, J., NOT PARTICIPATING.